COMMONWEALTH *vs.* JOHN JOSEPH MacNEIL. March 31, 1987. *Practice, Criminal,* Plea. *Statute,* Retroactive effect.

MacNeil was indicted on January 24, 1969, on two charges of murder in the first degree and five lesser offenses. On October 27, 1969, he pleaded guilty to murder in the second degree on the two murder charges and also to the lesser offenses. The pleas were accepted by a Superior Court judge and two concurrent life sentences were imposed, with shorter terms (concurrent with the life sentences) on the other offenses.

On November 1, 1985, MacNeil pro se filed a motion to vacate the judgments and to withdraw his guilty pleas. Counsel was appointed. After a hearing on March 24, 1986, a Superior Court judge (other than the sentencing judge who had retired from the court in the interim) made findings on April 2, 1986, on the pleadings as they then stood (on MacNeil's motion of December 17, 1985), which relied only on MacNeil's claim that his sentences should be vacated because of G. L. c. 278, § 29 (*d*), inserted by St. 1978, c. 383, effective October 10, 1978. See Appendix to this rescript, par. 1. That statute imposed on trial courts the duty to advise defendants, when accepting from them a plea of guilty or of nolo contendere, of the possible consequences of such a conviction upon their immigration status.

The motion judge found essentially the facts already stated. He also made the following findings: (a) "Although . . . [MacNeil] had previously been determined [to be] incompetent, . . ." he was now found competent to stand trial. (b) When on October 27, 1969, MacNeil offered guilty pleas, the trial judge "conducted a colloquy with . . . [MacNeil] in which . . . [MacNeil] acknowledged that no one had put pressure on him to offer these pleas, and that the pleas were offered freely and voluntarily . . . . [MacNeil] acknowledged that no promises regarding sentencing had been made to him . . . . [H]e admitted that he had discussed the matter with his parents and his attorney . . . . [H]e was informed of his right to go to trial on each of the indictments." The trial judge accepted the guilty pleas and imposed the sentences already mentioned. (c) MacNeil "had remained incarcerated since his initial arrest in 1969, except for a one year period. He managed to escape from prison for approximately one year. During this period, he went to Canada." (d) MacNeil "is not a citizen of the United States . . . [but] is a citizen of Canada." (e) During the plea hearing, "the . . . [trial judge] did not advise . . . [MacNeil] that, because he was an alien, a guilty plea could trigger deportation proceedings against him." On June 6, 1979, after a hearing before the United States Immigration Court a deportation order was issued, and a deportation warrant for [MacNeil] is now in effect. (f) MacNeil has "failed to show that he suffered any prejudice as a result of not being informed that a guilty plea could result in deportation." His return to Canada "after he had escaped from prison indicates that[,] even had he been informed of the possibility of deportation, it would most likely not have affected his decision. See *Nelson* v. *Callahan,* 721 F.2d 397, 400 (1st Cir. 1983)."

The judge concluded "that the guilty pleas were offered knowingly, voluntarily, and [were] accepted in a manner which protected . . . [Mac-Neil's] constitutional rights. Justice was done when the pleas were accepted and sentences imposed."

The judge correctly ruled that St. 1978, c. 383, which became effective nearly nine years after MacNeil pleaded guilty on October 27, 1969, had no retroactive application to the careful and patient inquiry employed by the trial judge under then existing law to be sure that the pleas were voluntary. As a general rule a statute will be construed to operate retroactively only where the Legislature shows a clear intent that it shall do so. See *Nationwide Mut. Ins. Co.* v. *Commissioner of Ins.,* 397 Mass. 416, 421-422 (1986). No legislative intent is shown in the express language of any part of c. 383 that the statute shall apply to any criminal proceeding already completed on its effective date. See *City Council of Waltham* v. *Vinciullo,* 364 Mass. 624, 627-628 (1974); *Cranberry Realty & Mortgage Co.* v. *Ackerley Communications, Inc.,* 17 Mass. App. Ct. 255, 257-259 (1983). See and compare *Commonwealth* v. *Greenberg,* 339 Mass. 557, 578-579 (1959). The italicized language of the second paragraph of § 29D in part 1 of the appendix to this rescript shows no legislative intention that the section shall have retroactive effect.

We discuss in part 2 of the appendix MacNeil's contention that a comparison of c. 383 with a somewhat similar 1977 California statute shows that c. 383 was intended to have application even to cases already fully disposed of before the effective date in 1978 of c. 383. We do not find these contentions convincing.

MacNeil's pleas were accepted in 1969, long before Mass.R.Crim.P. 12, 378 Mass. 866 (1979), was promulgated. The 1969 proceedings of the presiding judge conformed with the practice then prevailing. *Commonwealth* v. *Morrow,* 363 Mass. 601, 604-609 (1973). See *Huot* v. *Commonwealth,* 363 Mass. 91, 98-100 (1973). The problems raised in a proceeding under Mass.R.Crim.P. 30, 378 Mass. 900 (1979), of permitting withdrawals of guilty pleas have been discussed very fully in *Commonwealth* v. *DeMarco,* 387 Mass. 481, 484-487 (1982). We are guided by the policy stated in that decision.

It appears to be settled that (absent an applicable statutory requirement) there is no obligation on a judge accepting a plea of guilty to warn a defendant of possible collateral and contingent consequences of his plea. *Commonwealth* v. *Santiago,* 394 Mass. 25, 30 (1985, parole consequences). See the *Morrow* case, 363 Mass. at 605 (possibility of confinement as a sexually dangerous person); *Commonwealth* v. *Brown,* 6 Mass. App. Ct. 844 (1978, ineligibility for sentence deductions); *Commonwealth* v. *Nolan,* 16 Mass. App. Ct. 994 (1983), *S.C.,* 19 Mass. App. Ct. 491, 494-502 (1984, nonprejudicial violation by mistake of Mass.R.Crim.P. 12, *supra,* causing no manifest injustice). See also *Fruchtman* v. *Kenton,* 531 F.2d 946, 949 (9th Cir.), cert. denied, 429 U.S. 895 (1976). See and compare *Downs-Morgan* v. *United States,* 765 F.2d 1534, 1539 (11th Cir. 1985).

> *Order denying motion to vacate*
> *and to withdraw guilty pleas*
> *affirmed.*

APPENDIX.

1. THE 1978 MASSACHUSETTS STATUTE.
Statute 1978, c. 383, entitled "An Act to advise an alien of the potential consequences of a criminal conviction upon their immigration status," inserted the following new section in G. L. c. 278.
"*Section 29D*: Conviction Upon Pleas of Guilty or Nolo Contendere: Motion to Vacate:
"The Court shall not accept a plea of guilty or nolo contendere from any defendant in any criminal proceeding unless the Court advises him of the following: 'If you are not a citizen of the United States, you are hereby advised that conviction of the offense for which you have been charged may have consequences of deportation, exclusion from admission to the United States, or denial of naturalization, pursuant to the laws of the United States.' The defendant shall not be required at the time of the plea to disclose his or her legal status in the United States to the court.

"If the Court fails so to advise the defendant, and he later *at any time shows that his plea and conviction may have one of the enumerated consequences, the Court, on the defendant's motion,* shall vacate the judgment, and permit the defendant to withdraw the plea of guilty or nolo contendere, and enter a plea of "not guilty." Absent a record that the Court provided the advisement required by the section, the defendant shall be presumed not to have received the required advisement." (Emphasis supplied.)

2. COMPARISON OF THE PERTINENT 1978 MASSACHUSETTS STATUTE AND A 1977 CALIFORNIA STATUTE.

MacNeil contends that c. 383 was copied in large measure from a carefully drafted 1977 California statute, California Penal Code § 1016.5 (Deering 1987) which contains, in essentially the same words used in c. 383, the directions to courts to advise defendants (when pleading guilty) of the immigration hazards to an alien of a conviction upon such a plea but making it clear by provisions (not copied in c. 383) that the statute was not to be applicable to guilty pleas accepted prior to January 1, 1978. The California statute also stated in a different order various provisions which in fact were included in c. 383. Examination of the legislative history of c. 383 discloses nothing suggesting that the California statute ever was brought to the attention of the Massachusetts Legislature in 1978. Thus the omission from c. 383 of the California provisions restricting retroactivity has no special significance. A letter to MacNeil, dated March 12, 1986, found in the record appendix, from the legislator filing what eventually became c. 383 (1978 Senate Doc. No. 1480), stating that *his* "intention was that the statute have retroactive effect," is no indication whatsoever to us that any other legislator knew of, or shared, that intention on a bill which the 1978 Legislative Bulletin (at 122S) suggests went through both houses with no material change. In any event the similarities and differences of the two statutes, even if to be considered at all, are not binding upon Massachusetts courts. See *Piemonte* v. *New Boston Garden Corp.,* 377 Mass. 719, 723-727 (1979).

*Paul M. Yee* for the defendant.

*Judy G. Zeprun,* Assistant District Attorney, for the Commonwealth.