## COMMONWEALTH vs. MIA BETH SHINDELL.

No. 03-P-1123.

Suffolk. February 10, 2005. - May 11, 2005.

Present: ARMSTRONG, C.J., BROWN, & KAFKER, JJ.

*Indecent Assault and Battery. Practice, Criminal,* Plea, Assistance of counsel.
   *Sex Offender.*

A Superior Court judge properly denied a defendant's motion to withdraw her
   guilty plea to the crime of indecent assault and battery based on the fact
   that she was not advised that she could be required to register as a sex of-
   fender, where the statute giving rise to that possibility, G. L. c. 6,
   § 178E(d), specifically provides that failure to so warn the defendant does
   not invalidate the plea [504-506]; likewise, the defendant was not permit-
   ted to withdraw her guilty plea on the ground that the judge exceeded the
   defendant's requested sentence but never gave her the opportunity to
   withdraw her plea, where the defendant had not actually pleaded guilty at
   the time the judge announced what his sentence would be [506-507].
There was no merit to the claim of ineffective assistance of counsel raised by
   a criminal defendant who pleaded guilty to indecent assault and battery,
   where her counsel's failure to raise the issue of consent could not have
   deprived her of a substantial ground of defense, in that the facts supported
   a conclusion beyond a reasonable doubt that the victim did not consent to
   the touching, and where her counsel's alleged failure to inform her that she
   could be subject to sex offender registration was inconsequential. [507-508]

COMPLAINTS received and sworn to in the Boston Municipal
Court Department on March 22, 2000, and May 1, 2000,
respectively.

A motion to withdraw a plea of guilty, filed on March 3,
2003, was heard by *Michael F. Flaherty,* J.

*Ilse Nehring* for the defendant.

*Douglas E. Zemel,* Assistant District Attorney, for the
Commonwealth.

BROWN, J. The defendant pleaded guilty to indecent assault

and battery.[1] G. L. c. 265, § 13H. She now seeks to withdraw that guilty plea on two main bases: (1) she was not advised that she could be required to register as a sex offender; and (2) she was not given the opportunity to withdraw her "defense-capped" plea after the judge indicated he would exceed the defendant's sentencing recommendation. In addition, she argues she should be permitted to withdraw her plea because she was not informed, as required by Mass.R.Crim.P. 12(c)(3)(B), 378 Mass. 868 (1979), of the possibility of being subject to additional punishment under the sexually dangerous person provisions of the General Laws. See note 3, *infra.* She also asserts a claim of ineffective assistance of counsel. For the following reasons, we affirm the denial of the defendant's motion.

The facts, in brief, are these. The defendant was working as a prostitute and was approached by an undercover police officer. He asked if she "was working." In the process of their negotiations, the defendant several times invited the officer to touch her breasts. She then placed her hands on the officer's genital area. This formed the basis for the indecent assault and battery charge.[2]

The defendant claims first that she should be permitted to withdraw her guilty plea because she was not informed that she could be required to register as a sex offender. The mandate that a defendant be informed that she could be required to register derives from G. L. c. 6, § 178E(*d*), as appearing in St. 1999, c. 74, § 2, which provides, "Any court which accepts a plea for a sex offense shall inform the sex offender prior to acceptance and require the sex offender to acknowledge, in writing, that such plea may result in such sex offender being subject to the provisions of sections 178C to 178P, inclusive." The last sentence of § 178E(*d*), however, states: *"Failure to so inform the sex offender shall not be grounds to vacate or invalidate the plea"* (emphasis supplied). Compare G. L. c. 278, § 29D (specifically permitting defendant to withdraw guilty plea if he

---

[1]She also pleaded guilty, on the same day, to negotiating sex for a fee. G. L. c. 272, § 53A. That plea is not at issue in the present appeal.

[2]In prior times, perhaps her attorney would have entered the defense of "molliter manus imposuit" ("he [or she] [only] gently laid hands upon" the victim), a term "used in actions of trespass and assault to justify a defendant's use of force as reasonable." Black's Law Dictionary 1021 (7th ed. 1999).

is not informed of certain possible immigration consequences of guilty plea and later faces such a consequence).[3]

Generally, under Massachusetts law, failure to inform a defendant of collateral or contingent consequences of a plea does not render a plea involuntary. See, e.g., *Commonwealth v. Hason*, 27 Mass. App. Ct. 840, 843 (1989). The possibility of registration as a sex offender would be a contingent or collateral consequence of such a plea: minimum due process requires that a defendant be granted a hearing before being required to register as a sex offender, see *Doe v. Attorney Gen.*, 426 Mass. 136, 137 (1997); thus, not only is the possibility that the defendant could be required to register as a sex offender an uncertainty, it is also a decision made not by the trial court, but by the sex offender registry board. See *Doe, Sex Offender Registry Bd. No. 972 v. Sex Offender Registry Bd.*, 428 Mass. 90, 91 (1998). The fact that an entity outside the court decides whether the defendant ultimately must register is the very definition of a collateral consequence. Cf. *Commonwealth v. Fraire*, 55 Mass. App. Ct. 916, 918 (2002) ("it is not the indeterminate nature of immigration consequences that makes them collateral in nature; it is the fact that such consequences are handed down by a body entirely separate from the court that accepts the guilty plea"). General Laws c. 278, § 29D, which requires that information as to possible immigration consequences be given a defendant before a plea is accepted, carves out an exception to

---

[3]The defendant also relies in part on Mass.R.Crim.P. 12(c)(3)(B), which provides that prior to tender of a guilty plea, a defendant must be informed "of any different or additional punishment based upon . . . sexually dangerous persons provisions of the General Laws, if applicable." See *Commonwealth v. Rodriguez*, 52 Mass. App. Ct. 572, 580-581 (2001). The portion of the rule relied on, however, is directed to situations where a defendant may face involuntary commitment pursuant to G. L. c. 123A and, contrary to the defendant's contention, does not speak to G. L. c. 6, §§ 178C - 178O (the Sex Offender Registration and Community Notification Act). Moreover, although indecent assault and battery is included in the "sexual offense[s]" listed in the definitions in G. L. c. 123A, § 1, there is nothing in the record to suggest that the defendant meets the remaining portion of the definition of "sexually dangerous person" set out in that section. Therefore, it seems unlikely that advisement of the possibility of proceedings pursuant to c. 123A would have made any difference in the decision to plead guilty. Cf. *Commonwealth v. Correa*, 43 Mass. App. Ct. 714, 718 (1997) (defendant must show that alleged omission made a difference in decision to plead guilty).

the general rule on collateral consequences by permitting a defendant who was not given the required warning and faces such a consequence to withdraw the plea. See *Commonwealth* v. *Fraire*, 59 Mass. App. Ct. at 918. The statute in question here, G. L. c. 6, § 178E(*d*), however — as we have seen — while requiring that a defendant entering a plea to a sex offense be informed of §§ 178O to 178P, specifically provides that failure to so warn is not a ground to invalidate the plea. Although it may appear anomalous to require such a warning but to provide that no consequence follows if the requirement is not met, we are constrained by the wording of the statute.

2. The defendant next argues that she should be permitted to withdraw her guilty plea because the judge exceeded the defendant's requested sentence but never gave the defendant an opportunity to withdraw her plea. See G. L. c. 278, § 18; Dist./Mun.Cts.R.Crim.P. 4(c) (1996). See also Mass.R.Crim.P. 12(c), as amended, 399 Mass. 1215 (1987).[4] This argument fails for the reason, if no other, that the defendant had not actually pleaded guilty at the time the judge announced what his sentence would be. The actual plea colloquy did not begin until the judge announced what his sentence would be. It was only *after* the conclusion of the colloquy that the defendant tendered her plea.[5] This is made clear by the transcript of the plea hearing itself, wherein the judge, after indicating what his sentence would be, obtaining agreement from the prosecutor (who had recommended a more severe sentence), and stating that he would hand down his decided-upon sentence, then proceeded to engage in a colloquy with the defendant. It is apparent from this colloquy that the defendant had every opportunity to decide not to plead guilty, but instead chose to do so. In almost all instances,

---

[4] See now Mass.R.Crim.P. 12(c), as amended, 442 Mass. 1511 (2004), applicable to cases under indictments or complaints filed on or after September 7, 2004.

[5] Our interpretation of the plea hearing is guided by the transcript of the recorded proceedings of the plea hearing supplemented, for parts marked "inaudible" or "unintelligible," by what is captioned in the appendix as an "unofficial" transcript, apparently prepared by the parties, which the judge at the motion hearing (who was also the plea judge) described as "pretty accurate." See generally Mass.R.A.P. 8(b)(3)(v), 388 Mass. 1106 (1983), and 8(c)-(e), 378 Mass. 932 (1979); *Commonwealth* v. *Harris*, 376 Mass. 74, 78-80 (1978).

the judge's statements during the colloquy were couched in the subjunctive, e.g., "*if* you plead guilty . . . ." After the judge's announcement of what his sentence would be, his thorough colloquy with the defendant, and the prosecutor's recitation of facts (which the defendant acknowledged were true), the judge asked the defendant, "Do you plead guilty willingly, freely, and voluntarily?" The defendant responded, "Yes." The judge then asked several more questions to make certain the defendant's understanding and agreement with the proceedings.

At the hearing on the motion to withdraw the guilty plea, the judge (who was the same judge who had accepted the defendant's guilty plea) commented, "All parties should be aware of the fact that I am very familiar with this case," and stated further, "There was a lengthy period of time spent discussing the tender of plea with [defense counsel] and you see some inaudible indications on the side. I recall telling [defense counsel] to make sure that his client was aware of the ramifications of her tender of her plea. She [i.e., the defendant] chose to do that at that time."

3. Finally, we find no merit in the defendant's ineffective assistance of counsel claim. The defendant's assertion that she had a valid defense — consent — to the charge of indecent assault and battery is without merit in the circumstances of this case. Here, neither the facts admitted to nor the more expanded version of the facts in the police report suggest that the undercover officer consented to the touching. The mere fact that the undercover officer asked the defendant if she "was working" does not mean that he consented to having his genitals touched. According to the description of the incident in the police report, after the undercover officer asked if she was working, the defendant asked him to grab her breasts. He refused, saying the area was too public. The defendant then "grabbed the officer by placing her hand on his crotch and squeezing." Since the facts support a conclusion beyond a reasonable doubt that the victim did not consent to the touching, it is unlikely that the defendant was deprived of a "substantial ground of defence" in that respect. See *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). Further, counsel was not ineffective in allegedly failing to inform the

defendant that she could be subject to sex offender registration. As we have stated, such a potential consequence remains collateral in nature; therefore, counsel was not constitutionally ineffective, since it is unlikely (as discussed above) that counsel's performance deprived the defendant of an otherwise available, substantial ground of defense. Cf. *Commonwealth* v. *Indelicato*, 40 Mass. App. Ct. 944, 945 (1996) (counsel not ineffective despite rendering misleading advise as to collateral consequence of guilty plea); *Commonwealth* v. *Fraire*, 55 Mass. App. Ct. at 918 (because defendant not entitled to any warning as to collateral consequences beyond that mandated by statute, counsel not ineffective for failing to give additional warning). In brief, the defendant received all to which she was entitled.

> *Order denying motion to withdraw guilty plea and for a new trial affirmed.*